U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

FEB 0 1 2016

TONY R. MOORE  CLERK
BY _____
                  DEPUTY

UNITED STATES DISTRICT COURT              b
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| ALBERT ARNOLD, Petitioner | CIVIL ACTION NO. 1:15-CV-01193 SECTION "P" |
| VERSUS | CHIEF JUDGE DRELL |
| JEFF WINDHAM, Respondent | MAGISTRATE JUDGE PEREZ-MONTES |

---

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the Court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by pro se petitioner Albert Arnold ("Arnold") on April 15, 2015 (Doc. 1). Arnold is attacking his 2012 convictions by a jury in the Twenty-Eighth Judicial District Court in LaSalle Parish, Louisiana, on one count of manufacturing methamphetamine and one count of conspiracy to manufacture methamphetamine. Arnold was sentenced to a total of twenty-two years imprisonment.  Arnold is presently incarcerated in the LaSalle Correctional Center in Olla, Louisiana.

The sole ground Arnold raises for relief in his habeas petition is whether there is sufficient evidence to support his convictions.   Specifically, Arnold contends his convictions were obtained by use of evidence that belonged to his son, Joshua Arnold.

Respondent answered to the petition (Docs. 14, 15).   Arnold contends, and the Respondent admits, that Arnold exhausted his state court remedies (Docs. 1, 14).

## Facts

The facts of this case as set forth by the Louisiana Third Circuit Court of Appeal at State v. Arnold, 13-218 (La. App. 3d Cir. 11/6/13), 124 So.3d 592, writ den., 13-2723 (La. 5/2/14), 138 So.3d 1245, are:

> Defendant, Albert L. Arnold, was convicted of manufacturing methamphetamine and conspiracy to manufacture methamphetamine after police executed a search warrant at his residence and found items that are used to manufacture methamphetamine, the remnants of two methamphetamine cooks, residue of methamphetamine in Defendant's bedroom, and methamphetamine that had been in the possession of Defendant's son, Joshua Arnold.

## Rule 8(a) Resolution

The Court is able to resolve this habeas corpus petition without the necessity of an evidentiary hearing because there is no genuine issue of material fact relevant to the petitioner's claims, and the state court records provide the required and adequate factual basis necessary to the resolution of the habeas corpus petition. Moya v. Estelle, 696 F.2d 329, 332-33 (5th Cir. 1983); Easter v. Estelle, 609 F.2d 756, 761 (5th Cir. 1980); Habeas Corpus Rule 8(a).

## Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall be considered only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.  See 28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254, habeas relief is not available to a state prisoner with respect to a claim that was adjudicated on the merits in the state court proceedings

unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.   Therefore, pure questions of law and mixed questions of law and fact are reviewed under Section 2254 (d) (1), and questions of fact are reviewed under Section 2254(d) (2).   See Martin v. Cain, 246 F.3d 471, 475-76 (5th Cir.), cert. den., 534 U.S. 885 (2001), and cases cited therein.

A state court decision is "contrary to" clearly established Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases, or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent.   A state court decision falls within the "unreasonable application" clause when it unreasonably applies Supreme Court precedent to the facts.   See Martin, 246 F.3d at 476, and cases cited therein.

<u>Law and Analysis</u>

Arnold contends there is insufficient evidence to support his convictions because his convictions were obtained by use of evidence that belonged to another. Arnold was convicted of manufacturing methamphetamine and conspiring to do so with his son, Joshua Arnold, and Matilda Holmes.   Arnold argues the only evidence found that was connected to him proved only that he was guilty of the lesser-included offence of possession of methamphetamine.   Arnold points out that the bottle

3

containing remnants of a prior cook was found near Joshua Arnold's bed, and the only quantity of methamphetamine the police found was that discarded by Joshua in the field. Arnold further contends there was no evidence of active manufacturing of methamphetamine or that Arnold had participated in manufacturing methamphetamine.

Habeas relief on a claim of insufficient evidence is appropriate only if it is found that, upon the record evidence adduced at trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. See West v. Johnson, 92 F.3d 1385 (5th Cir. 1996), cert. den., 520 U.S. 1242 (1997) (citing Jackson v. Virginia, 443 U.S. 307, 322-326 (1979). To apply this standard, the Court looks to elements of the offense as defined by state substantive law. See Donahue v. Cain, 231 F.3d 1000, 1004 (5th Cir. 2001). All credibility choices and conflicting inferences are to be resolved in favor of the verdict. A determination of a factual issue made by a state court shall be presumed correct, and the petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. See Ramirez v. Dretke, 398 F.3d 691, 693 (5th Cir.), cert. den., 546 U.S. 831 (2005).

A jury's determination of witness credibility, the inferences made on the evidence, and the jury's reasonable construction of the evidence is entitled to a great deal of deference by a reviewing court. See Marshall v. Lonberger, 459 U.S. 422, 433-435 (1983). In addition, where there has been a thoughtful review of the sufficiency of the evidence by a state appellate court, that court's findings are entitled to great weight. See Jackson, 443 U.S. at 322 n.15.

4

Arnold contends there was no evidence that he participated in cooking methamphetamine with his codefendants because none of the items seized were purchased or handled by him and he had no knowledge of the items.   Arnold further contends he admitted the items found in a blue metal container in his bedroom were his—two syringes and a spoon.   Arnold contends that his son, Joshua Arnold, had hidden the items seized throughout the house in order to hide his activities from his parents, Joshua and Deborah Arnold.   Arnold argues that he was not aware Joshua Arnold was cooking methamphetamine, and that possession of the seized items without actively manufacturing methamphetamine is insufficient to prove the elements of the offense.

La. R.S. 40:967 (Prohibited acts - Schedule II, penalties) defines the manufacturing crime for which Joshua was convicted:

> A. Manufacture; distribution. Except as authorized by this Part or by Part VII-B of Chapter 5 of Title 40 of the Louisiana Revised Statutes of 1950, it shall be unlawful for any person knowingly or intentionally:
> (1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance or controlled substance analogue classified in Schedule II;... .   [Footnotes omitted.]

Criminal conspiracy is defined in La. R.S. 14:26(A) as follows:

> Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.

5

In the case at bar, the jury clearly found, from the items used to manufacture methamphetamine seized from Arnold's home and the evidence in the blue metal box found in Arnold's bedroom, that Arnold personally used methamphetamine and had conspired with Joshua Arnold and Matilda Holmes to manufacture methamphetamine. Whether Arnold actually purchased or handled the lab equipment or assisted in cooking the methamphetamine is irrelevant. After the agreement to manufacture methamphetamine, only one of the co-conspirators needed to have committed an act in furtherance of the conspiracy to manufacture methamphetamine.

Arnold also argues that the police did not find an active methamphetamine lab, so there was no proof that methamphetamine was being manufactured. However, La.R.S. 40:961(24) states that "manufacture" means production, preparation, propagation, compounding or processing of a controlled dangerous substance, and includes any person who packages, repackages, or labels any container of any controlled dangerous substance. Under the statute, the state does not need to prove the Defendant was in the actual process of manufacturing a controlled substance at the time of the search and seizure. See State v. Shumaker, 41,547 (La. App. 2d Cir. 12/13/06), 945 So.2d 277, 284, writ den., 07-144 (La. 9/28/07), 945 So.2d 277. Moreover, as noted in Shumaker, it is common for those manufacturing methamphetamine to begin the process in one place and take it to another place to complete it, or to break down the lab after finishing a batch and store the components in different places. See Shumaker, 945 So.2d at 284. Therefore,

the presence of an active lab is not required to prove that a defendant is manufacturing a controlled dangerous substance.

Detective Zeagler and Deputy Prince, both employed by the LaSalle Parish Sheriff, testified that they had a search warrant for the residence of Defendant, "Butch" Arnold (Doc. 14-9, pp. 14, 21/164).   Although no one was home when they arrived, Defendant, Joshua Arnold, Deborah Arnold, and Matilda Holmes arrived soon after, and Defendant, Joshua Arnold and Matilda Holmes were apprehended (Doc. 14-9, pp. 16-17, 23-24/164).

Deputy Prince testified that Joshua Arnold told the officers about a prescription bottle (containing suspected methamphetamine) that he had dropped on the ground, which the officers found (Doc. 14-9, p. 26/164).

Detective Guin testified that he participated in the search of Arnold's residence and that Joshua Arnold showed him several items he had dropped out of his pocket as he ran from the police, including a prescription bottle containing suspected methamphetamine.   Detective Guinn testified that Joshua Arnold also showed him a butter bowl that contained fertilizer that was in the garage, a bottle of Liquid Fire in the utility room, a plastic bag with numerous hypodermic syringes in Joshua's room, a blue metal box in Arnold's room that contained hypodermic needles, razor blades, straws, a shoe lace, tin foil, a spoon, a couple of rags, and a pouch,[1] a container

---

[1] Deputy Guin testified that Arnold admitted to him that the blue metal box and its contents were his (Doc. 14-9, p. 88/164).

7

of Coleman lantern fuel found in the garage,[2] a small tan leather pouch containing

drug paraphernalia and suspected methamphetamines that was in Joshua's room, a

box of plastic sandwich bags that was in Joshua's room, some zigzag rolling papers

that were in Joshua's room, a straw found in Joshua's room, some plastic tubing found

in Joshua's room, a set of digital gram scales that were in Joshua's room, a plastic

(Gatorade) bottle that had the remnants of a meth cook in it that was found in

Joshua's room,[3] a glass Tostitos salsa container holding caustic soda that was found

in the bathroom, a coffee filter[4] found in Joshua's room that contained white

substances suspected to be binding material or possible pseudoephedrine or

methamphetamine, the remnants of a previous cook in a Dr. Pepper bottle that was

found in a trash bag, and broken lithium batteries with the lithium strips removed

and the lithium strips[5] that had been pulled from the batteries that were in a trash

bag (Doc. 14-9, pp. 48-57, 89-91/164).

    In a DVD introduced by the state, Arnold confessed to Detective Guin that he

and his son had been cooking methamphetamine for about two months, and that he

had an addiction problem (Doc. 14-14; Doc. 9, p. 94/164).   Arnold also admitted that

---

[2] Detective Guin testified that Coleman lantern fuel is used as a catalyst agent in manufacturing methamphetamine (Doc. 14-9, p. 53/164).
   [3] Detective Guin testified that the methamphetamine was manufactured from ephedrine inside the plastic bottle (Doc. 14-9, p. 55/164).
   [4] Detective Guin testified that coffee filters are used to strain substances from the liquid that comes out of a meth cook (Doc. 14-9, p. 56/164).
   [5] Detective Guin testified that lithium strips are used in the "shake and bake" method of manufacturing methamphetamine (Doc. 14-9, p. 84/164).

Detective Guin had read him his rights, that he knew he did not have to talk to him, and that he was willing to cooperate (Doc. 14-14).

Rachel Plaisance, a chemist employed at the North Louisiana Crime Lab, testified that she had tested the items submitted to her and that the spoon had methamphetamine and ephedrine on it (Doc. 14-9, p. 103/164), one piece of plastic had methamphetamine on it (Doc. 14-l9, p. 107/164), and the prescription bottle contained packets containing methamphetamine (Doc. 14-9, pp. 107-108/164).   Alex King, a forensic chemist at the North Louisiana Crime Lab, testified as to the manufacturing process for methamphetamine and the readily available items used to create it: ephedrine, fertilizer or ammonia nitrate, Liquid Fire, Coleman camp fuel, caustic soda, lithium, and coffee filters (Doc. 14-9, pp. 120-125/164).

The Louisiana Third Circuit Court of Appeal found that, viewing the evidence in the light most favorable to the state, the jury could have determined that Arnold participated in the manufacture of methamphetamine based on his remarks when questioned by Detective Guin and the evidence of two prior methamphetamine cooks at his residence.   State v. Arnold, 124 So.2d at 599.

The determinations by the state courts that Arnold conspired with the others and manufactured methamphetamine are presumed correct.   See Ramirez, 398 F.3d at 693.   Arnold has not carried his burden of rebutting the presumption of correctness by clear and convincing evidence.   When viewed in the light most favorable to the convictions, the evidence shows that Arnold was aware of and acceded to the manufacture of methamphetamine in his home, thereby providing a

place for his co-conspirators to manufacture the methamphetamine, and by his own admission (on video to Detective Guinn) assisted in manufacturing methamphetamine.   Therefore, sufficient evidence supports Arnold's convictions.

<u>Conclusion</u>

Based on the foregoing, IT IS RECOMMENDED that Arnold's § 2254 petition for writ of habeas corpus be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 2(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.   No other briefs (such as supplemental objections, reply briefs etc.) may be filed.   Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged.   Timely objections will be considered by the district judge before he makes a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. <u>See</u> <u>Douglass v. United Services Automobile Association,</u> 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. See 28 U.S.C. § 2253(c) (2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE AND SIGNED in Alexandria, Louisiana on this 31st day of January 2016.

HON. JOSEPH H. L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE

11